NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued August 2, 2011
Decided August 8, 2011

**Before**

DIANE P. WOOD, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 10-2975

| | |
|---|---|
| BENJAMIN C. PRICE,<br>        *Petitioner-Appellant,*<br><br>   *v.*<br><br>UNITED STATES OF AMERICA,<br>        *Respondent-Appellee.* | Appeal from the United States District Court for the Northern District of Indiana, Hammond Division.<br><br>No. 2:09cv320<br><br>Philip P. Simon,<br>*Chief Judge*. |

**O R D E R**

After a jury convicted Benjamin Price of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), the district court sentenced him to 250 months in prison. This court affirmed Price's conviction and sentence on direct appeal. *United States v. Price,* 520 F.3d 753 (7th Cir. 2008). Price then filed a motion under 28 U.S.C. § 2255 to vacate his sentence. He argues that he was denied his constitutional right to counsel at a critical stage of the trial when, immediately after Price asked the court to discharge his lawyer so that he could proceed *pro se*, the court forced him to decide whether to proceed *pro se* or to accept a mistrial, after which the court was willing to appoint another lawyer. Price also

argues that he should not have been sentenced as an armed career criminal, because one of his prior convictions should not have counted for that purpose. The district court rejected both of Price's arguments, and so do we. Under the circumstances of this case, the court was not required to do more to protect Price's right to counsel. His sentencing argument is foreclosed by prior decisions of this court, and in any event it pays too little heed to the nature of the predicate offense that contributed to his current sentence.

# I

As we noted the first time we had Price's case, at trial Price zig-zagged repeatedly between accepting representation by counsel and proceeding *pro se*. *Price,* 520 F.3d at 756. A public defender was appointed for Price after he was indicted in October 2004, but Price quickly moved to represent himself, and, after carefully warning Price about the risks of this course of action, a magistrate judge granted his motion. *Id*. at 757. Less than a month later, Price moved to withdraw his request to proceed *pro se* and asked for new counsel; in January 2005 the magistrate judge granted Price's request and appointed attorney Arlington J. Foley to represent him. *Id*. The district judge held a hearing in April 2005 after Price wrote several letters to the court expressing his unhappiness with Foley. *Id*. Price agreed at that time to continue with Foley as his counsel. *Id*.

On the morning of May 2, 2005—the first day of the trial—Price told the district judge that he did not want Foley to represent him and that he would prefer to proceed *pro se.* The judge refused to replace Foley, however, because he felt certain that Price "would again be dissatisfied." The judge insisted that the trial would proceed with Foley as counsel and pointed out that Price had made clear at the April hearing that he did not want to proceed *pro se.* That afternoon, however, after the jury had been selected, Price again asked to represent himself. At that point, the judge said he might consider appointing another lawyer, and he laid out three options for Price: proceed to trial that day with Foley as his attorney, proceed to trial that day *pro se* (with the option of having Foley as standby counsel), or ask the court to declare a mistrial and set a new trial date, recognizing that the new attorney and Price would need time to prepare. Because Price continued to object to Foley, the judge discharged Foley from representing Price but directed him to remain as standby counsel. The next morning, after the judge again explained his options, Price requested a mistrial; the judge granted his request.

Price went to trial 12 months later with his third appointed lawyer—although he intermittently represented himself—and was convicted. *Price,* 520 F.3d at 757. The district court concluded that he had three qualifying prior convictions for violent felonies and imposed an enhanced sentence of 250 months' imprisonment under the Armed Career Criminal Act, 18 U.S.C. § 924(e)(1).

After this court affirmed his conviction and sentence, Price moved under 28 U.S.C. § 2255 to vacate his sentence. The district court denied the motion but granted Price a certificate of appealability on two claims: his right to counsel was violated when the district court declared a mistrial, and he was actually innocent of being an armed career criminal because his 1996 Indiana criminal recklessness conviction was not a violent felony.

## II

### A

Price argues that the district judge denied him his right to counsel under the Sixth Amendment during the hearing on May 3, 2005, when the judge forced him to decide, at a time when he was without counsel, whether to accept a mistrial. (Price did not present this claim on direct appeal, but the government has forfeited any argument that it is procedurally defaulted. See *Welch v. United States*, 604 F.3d 408, 413 (7th Cir. 2010). Accordingly, we address the merits of Price's claim.) And because that decision was, in Price's view, a critical stage of the proceedings, he argues that the deprivation of counsel requires an automatic reversal of his conviction.

Price overlooks the fact that on May 2 he waived his right to counsel and chose to represent himself. Although he contends that his waiver was invalid and points out that the district judge did not conduct a formal waiver inquiry on May 2, we are not required to put on blinders and look only at what happened on that day. The record as a whole demonstrates that Price's waiver was voluntary and knowing and thus valid. See *Faretta v. California*, 422 U.S. 806, 835 (1975); *United States v. Cooper*, 591 F.3d 582, 587 (7th Cir. 2010); *United States v. Johnson*, 534 F.3d 690, 693-94 (7th Cir. 2008). Price had been representing himself off and on throughout the case, after receiving appropriate warnings. See *Price*, 520 F.3d at 757 ("Magistrate Judge Rodovich carefully warned Price of the pitfalls of that course of action, but Price persisted and the judge granted the motion."). At the April status hearing, the district judge noted that Foley had 30 years of experience and urged Price to "consider very closely what he tells you. He has your interest at heart. Whether you believe it or not, he does. And you should strongly consider the advice that he gives you." When Price asked on the morning of May 2 to represent himself, the judge told him, "I don't think it's a good idea." Price responded, "I know it's not a good idea, but that's the best thing I can do. He [*sic*] not going to represent me effective. I might as well try it myself. I'm getting railroaded anyway. So, I might as well do it myself." Taken together, these interactions with the court over the course of the proceedings establish that Price was adequately warned about the dangers of waiving his right to counsel. See *United States v. England*, 507 F.3d 581, 586-87 (7th Cir. 2007).

Providing more evidence that his waiver was voluntary and knowing, Price also offered strategic reasons for wanting to proceed *pro se*. See *Johnson*, 534 F.3d at 694-95; *United States v. Todd*, 424 F.3d 525, 533 (7th Cir. 2005). For example, on the morning of May 2 he expressed concern that Foley had not followed up on two subpoenas filed by his first attorney and that motions filed by Foley were inadequate. Price's renewed request to proceed *pro se* that afternoon was prompted by his disagreement with Foley's recommendation that he stipulate to having a prior felony conviction.

In sum, Price validly waived his right to counsel on May 2; he therefore cannot claim that right was violated on May 3 when he had to make a tactical decision by himself. See *Faretta*, 422 U.S. at 834, n.46 ("a defendant who elects to represent himself cannot thereafter complain that the quality of his own defense amounted to a denial of 'effective assistance of counsel.'"); *Peoples v. United States*, 403 F.3d 844, 849 (7th Cir. 2005).

Price nevertheless suggests that his right to counsel was violated on May 3 because he did not understand why it was necessary for him to request a mistrial or what rights he would give up by doing so. The record, however, does not support his argument, even if this court could overlook his waiver. Although it shows that Price was confused about the meaning and effect of a mistrial on May 2 and at the beginning of the May 3 hearing, the district judge carefully explained to Price on May 3 that if he wanted a new lawyer and time to prepare, he would have to consent to a mistrial; otherwise, the trial would go forward that day, and Price could represent himself or have Foley serve as his counsel. The judge also explained that by agreeing to a mistrial, Price would give up his right to have the case decided by the jury selected the previous day. Only after saying that he understood his choice "a little bit better now" did Price consent to a mistrial.

B

Price also argues that his 1996 Indiana conviction for criminal recklessness, IND. CODE § 35-42-2-2, was not a violent felony under the residual clause of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(1). Therefore, he contends, he did not have three qualifying predicate offenses and should not have been subject to an enhanced sentence. The government's first response at the district court was that Price procedurally defaulted this point, but the court addressed it and the government has dropped this argument. We therefore address the merits.

As relevant here, the definition in ACCA of "violent felony" includes any crime punishable by more than a year in prison that "involves conduct that presents a serious

potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii). This "residual clause" covers crimes that present a level of risk comparable to that posed by burglary, arson, extortion, or crimes involving explosives. See *Sykes v. United States*, 131 S. Ct. 2267, 2273 (2011). When a statute covers multiple offenses, only some of which are violent felonies, a sentencing court may look at the charging document and any judicial record in which the defendant confirmed the factual basis for a guilty plea to determine which offense—a violent felony or not—the defendant committed. See *Shepard v. United States*, 544 U.S. 13, 25-26 (2005); *United States v. Dismuke*, 593 F.3d 582, 589 (7th Cir. 2010).

Under Indiana law, a person is guilty of criminal recklessness if he "recklessly, knowingly, or intentionally" performs an act that creates a "substantial risk of bodily injury" to another. IND. CODE § 35-42-2-2(b)(1). The offense is a Class D felony if committed while armed with a deadly weapon. *Id*. § 35-42-2-2(c)(2)(A). The only issue here relates to Price's state of mind; his guilty plea necessarily involved an admission that the act he performed created a substantial risk of bodily injury to another. According to the charging information for Price's offense, he committed criminal recklessness when he "recklessly, knowingly or intentionally" pointed a loaded shotgun at a woman named Jazette Neal. Price pleaded guilty, but at his plea hearing he denied pointing the shotgun at Neal; instead, he said that he pointed at and shot into an empty car after Neal said she didn't have the rent money she owed him. Toward the end of the colloquy, the court wondered if Price's change in target required an amendment to the information, but Price's lawyer assured the court that Price had "established a foundation for a plea of criminal recklessness in regards to what he's admitted that he has done." In denying Price's § 2255 motion, the district court concluded that his criminal recklessness conviction was a qualifying predicate offense because he intentionally fired the shotgun and therefore violated the intentional branch of the statute.

Relying on *Begay v. United States*, 553 U.S. 137 (2008) and *United States v. Smith*, 544 F.3d 781 (7th Cir. 2008), Price argues that his prior conviction cannot be a violent felony because he pleaded guilty only to reckless conduct. *Begay* noted that the crimes specifically enumerated in § 924(e)(2)(B)(ii) typically involved "purposeful, violent, and aggressive" conduct. 553 U.S. at 144-45. This court interpreted *Begay* to hold that an offense falls within the residual clause only if it is similarly purposeful, violent, and aggressive. *See, e.g., United States v. Capler*, 636 F.3d 321, 323 (7th Cir. 2011); *United States v. Fife*, 624 F.3d 441, 444 (7th Cir. 2010).

The Supreme Court recently said in *Sykes*, however, that requiring an ACCA predicate offense to be purposeful, violent, and aggressive "overreads" the Court's opinions. 131 S. Ct. at 2275. The Court emphasized that residual-clause analysis should focus on the risk of

physical injury. See *id.* at 2273, 2275 (noting that *Begay* was the "sole decision of this Court concerning the reach of ACCA's residual clause in which risk was not the dispositive factor"). The "purposeful, violent, and aggressive" phrase was used, the Court said, only to explain the result in *Begay*, where the prior conviction at issue—DUI—did not have to be committed purposefully. *Id.* at 2275-76.

Price's claim comes up short no matter how this court analyzes it. Criminal recklessness in Indiana can be committed recklessly, of course, and so a *Begay*-style analysis of his conviction might be appropriate. But as the district court concluded, Price's plea hearing makes plain that he committed the offense purposefully. (He does not suggest that his state conviction should be set aside altogether on the ground that he did nothing that qualified as criminal recklessness, nor could he at this point. See *Custis v. United States,* 511 U.S. 485 (1994) (holding that defendant in federal sentencing proceeding has no right to make a collateral attack on a prior state conviction used to enhance a sentence under the ACCA, with the sole exception of a conviction obtained in violation of the right to counsel). ) Price admitted that he retrieved a shotgun from a car, pointed the shotgun at a car, and fired at the car. That he denied threatening and pointing the gun at Neal is beside the point. Price pleaded guilty to criminal recklessness, and his admission shows that he *intended* to shoot and hit the car; this in turn means that he violated the intentional branch of the criminal-recklessness statute. See *United States v. Clinton*, 591 F.3d 968, 973-74 (7th Cir. 2010) (defendant's prior Indiana conviction for criminal recklessness was violation of intentional part of statute and predicate crime of violence because admission during plea colloquy that he stabbed victim more times than necessary revealed that he intended act and consequences); *cf. Smith*, 544 F.3d at 787 (prior Indiana convictions for criminal recklessness could not serve as predicate violent felonies because defendant did not admit to acting with intent and jury that convicted him was not asked to determine whether he acted knowingly or intentionally).

Price fares no better if this court analyzes the crime based on its risk of physical injury. His offense—intentionally performing an act that creates a substantial risk of bodily injury to another, while armed with a deadly weapon—"by its nature" presents a serious potential risk of injury to another. See *James v. United States*, 550 U.S. 192, 209 (2007); *Fife*, 624 F.3d at 449.

For these reasons, we AFFIRM the judgment of the district court.