In the

# United States Court of Appeals

## For the Seventh Circuit

No. 19-3137

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

LINDA NULF,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:17-CR-00436-2 — **Charles R. Norgle**, *Judge.*

ARGUED JUNE 4, 2020 — DECIDED OCTOBER 15, 2020

Before SYKES, *Chief Judge*, and EASTERBROOK, *Circuit Judge.*[1]

SYKES, *Chief Judge*. Linda Nulf participated in a mortgage-fraud scheme that caused in excess of $2 million in losses.

[1] Circuit Judge Barrett was a member of the panel when this case was submitted but did not participate in the decision and judgment. The appeal is resolved by a quorum of the panel pursuant to 28 U.S.C. § 46(d).

She was initially indicted on three felony counts and faced up to 30 years in prison, but the government later superseded those charges and substituted a single misdemeanor count. Nulf pleaded guilty under a written plea agreement that included an appeal waiver. The judge imposed a 12-month sentence, the statutory maximum.

Nulf appealed, notwithstanding the appeal waiver. She argues that the judge interfered with her allocution, wrongly denied credit for acceptance of responsibility, and committed other assorted mistakes at sentencing. These errors, she contends, add up to a miscarriage of justice, making the appeal waiver unenforceable.

This argument relies on *United States v. Litos*, 847 F.3d 906, 910–11 (7th Cir. 2017), but our decision in that case did not announce a general "miscarriage of justice" exception to the enforcement of appeal waivers. Rather, *Litos* fell within an established line of cases recognizing a narrow set of extraordinary circumstances that justify displacing an otherwise valid appeal waiver.

Nulf's case is far from extraordinary, so the normal rule applies: the appeal waiver is enforceable unless the underlying guilty plea was invalid. Because Nulf does not claim that her plea was unknowing or involuntary, we enforce the waiver and dismiss this appeal.

## I. Background

Linda Nulf worked as a licensed loan originator in Illinois. For approximately three years, she and two codefendants participated in a mortgage-fraud scheme in which they submitted loan applications containing false information about the applicant's income and assets. Nulf pre-

pared and submitted the fraudulent paperwork to financial institutions and the Department of Housing and Urban Development ("HUD"), causing approximately $2.2 million in losses.

A grand jury indicted Nulf on three felony charges: two counts of bank fraud in violation of 18 U.S.C. § 1344 and one count of making a false statement to a financial institution in violation of 18 U.S.C. § 1014. Each of these crimes carries a 30-year maximum prison term. The government later filed a superseding information charging Nulf with a single count of making a false statement to HUD, a misdemeanor punishable by up to one year in prison. 18 U.S.C. § 1012.

Nulf pleaded guilty to the misdemeanor pursuant to a written agreement in which the government agreed to dismiss the original felony charges. The parties further stipulated that the anticipated offense level was 23, which when combined with Nulf's nonexistent criminal history would result in the one-year statutory maximum as the recommended sentence under the Sentencing Guidelines. The plea agreement also included an appeal waiver:

> [D]efendant knowingly waives the right to appeal her conviction, any pre-trial rulings by the Court, and any part of the sentence (or the manner in which that sentence was determined), including any term of imprisonment and fine within the maximums provided by law, and including any order of restitution, in exchange for the concessions made by the United States in this Agreement.

The judge confirmed Nulf's understanding of the appeal waiver at the change-of-plea hearing. As anticipated, the presentence report ("PSR") recommended an offense level of 23, which included a 3-level reduction for acceptance of responsibility, and a criminal-history category of I. These calculations yielded an advisory Guidelines range of 46–57 months in prison, but the sentence was capped at the statutory maximum of 12 months. Nulf's only objection to the PSR concerned a recommended condition permitting a probation officer to visit her at work during supervised release.

Sentencing proceeded uneventfully until Nulf's allocution. She explained at length that the criminal case had been financially and personally devastating for her and her family and expressed a desire to be "a good person." Eventually the judge interjected, leading to the following exchange:

> THE COURT: It seems to me that you have yet to acknowledge what you did.
>
> THE DEFENDANT: I have acknowledged.
>
> THE COURT: What did you do?
>
> THE DEFENDANT: I didn't pay attention to what was going on and allowed—I was very sloppy about what went in, didn't pay attention, and incorrect information went in, and that is my responsibility.
>
> THE COURT: What did you do?
>
> THE DEFENDANT: I did not pay attention on the loan applications and so there was incorrect information on the loan applications that

were processed and closed. That is my responsibility.

Based on these responses, the judge determined that Nulf had not really accepted responsibility for her crime and removed the 3-level reduction for acceptance of responsibility from the Guidelines calculation. The new offense level was 26, increasing the advisory Sentencing Guidelines range to 63–78 months. This was all academic, of course; the sentence was limited by the one-year statutory maximum. The judge imposed the one-year sentence as contemplated by the plea agreement.

## II. Discussion

Nulf asks us to ignore her appeal waiver because the judge interfered with her right of allocution and wrongly deprived her of credit for accepting responsibility. She also seeks review of several other claimed errors at sentencing. But this case does not fit within the narrow set of circumstances in which we've recognized an equitable exception to an otherwise enforceable appeal waiver.

As a general matter, an appeal waiver must be enforced if its "terms are express and unambiguous, and the record shows that the defendant knowingly and voluntarily entered into the [plea] agreement." *United States v. Haslam*, 833 F.3d 840, 844 (7th Cir. 2016) (alteration in original) (quotation marks omitted). In other words, an appeal waiver stands or falls with the underlying agreement and plea. If the agreement and guilty plea are valid, so too is the appeal waiver. *Id.* We have declined to enforce an otherwise valid appeal waiver only in a few limited circumstances—for example, "when the sentence exceeds the statutory maximum, when

the plea or court relies on a constitutionally impermissible factor like race, or when counsel is ineffective in the negotiation of the plea agreement." *Dowell v. United States*, 694 F.3d 898, 902 (7th Cir. 2012).

Nulf concedes that her appeal waiver was express and unambiguous, and that she knowingly and voluntarily entered into it. She does not challenge the validity of her guilty plea. That is the end of the matter. The waiver must be enforced unless one of the narrow exceptions applies, and Nulf does not argue—nor could she—that her case falls within any of the exceptions we've just listed. She argues instead that our decision in *Litos* recognized a general "miscarriage of justice" exception and that her case qualifies under it.

This argument misreads *Litos*. That case involved a bank-fraud scheme by three coconspirators. Two were found guilty by a jury, but the third, Minas Litos, pleaded guilty and waived his right to appeal. 847 F.3d at 910. The three defendants appealed, challenging (among other things) the judge's imposition of approximately $900,000 in restitution, for which the three were jointly and severally liable. We agreed that the restitution order could not stand because the victim, a large bank, had been reckless and therefore did "not have clean hands." *Id.* at 907–08. That ruling, of course, lifted the restitution obligation from the defendants who were convicted at trial. But because Litos pleaded guilty and waived his right to appeal, he remained on the hook and solely responsible for the entire amount. *Id.* at 910. In that unusual situation, we declined to enforce the appeal waiver and relieved Litos of his obligation to pay under the invalid restitution order. *Id.* at 910–11.

Along the way to that holding, we noted that some cir-
cuits decline to enforce appeal waivers if doing so would
result in a "miscarriage of justice." *Id.* at 910. But we did not
adopt a general miscarriage-of-justice exception for this
circuit. To the contrary, we reiterated our circuit's longstand-
ing recognition of only a limited set of

> exceptional situations in which waiver does
> not foreclose appellate review—for example[,]
> if an appeal waiver is part of a plea agreement
> that was involuntary, or if the district court re-
> lied on a constitutionally impermissible factor,
> or if the defendant received ineffective assis-
> tance of counsel in regard to the negotiation of
> the plea agreement, or if the sentence exceeded
> the statutory maximum.

*Id.* And we emphasized that these exceptions "are narrow."
*Id.* at 911.

In short, *Litos* addressed a unique situation and did not
announce a new and amorphous miscarriage-of-justice
standard for setting aside an otherwise enforceable appeal
waiver. *See Oliver v. United States*, 951 F.3d 841, 847 (7th Cir.
2020) (explaining the limits of *Litos*); *United States v. Carson*,
855 F.3d 828, 831 (7th Cir. 2017) (same). Because Nulf's
appeal waiver is valid and enforceable, this appeal is

DISMISSED.